UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN M. RILEY,

        Plaintiff,

v.                               **DECISION AND ORDER**
                                        04-CV-01015

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

    1.    Plaintiff John M. Riley challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since June 24, 2002, because of pain and limitations from a back condition. Plaintiff met the disability insured status requirements of the Act at all times pertinent to this claim.

    2.    Plaintiff filed an application for DIB on February 11, 2003. His application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to Plaintiff's request, an administrative hearing was held via video teleconference on February 10, 2004, before ALJ William B. Harmon, at which time Plaintiff and his attorney appeared. The ALJ considered the case *de novo*, and on May 25, 2004, issued a decision finding that the Plaintiff was

1

not disabled. On July 22, 2004, the Appeals Council denied Plaintiff's request for review.

    3.    On August 27, 2004, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[1] The Defendant filed an answer to Plaintiff's complaint on December 1, 2004, requesting the Court dismiss Plaintiff's complaint. Plaintiff submitted a Memorandum of Law in support of Plaintiff's request for review of the ALJ's unfavorable determination of employment disability on January 17, 2005. On February 22, 2005, Defendant filed a Memorandum of Law in Support of the Defendant's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

    4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts

---

[1] The ALJ's May 22, 2004, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

    5.    "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

    6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The

United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

    7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activeties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

    8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy

4

that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits as set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision (R. at 18);[3] (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (R. at 18); (3) Plaintiff's degenerative disc disease and chronic back pain are considered "severe" based on the requirements of the regulations at 20 C.F.R. § 404.1520(c) (R. at 18); (4) These medically determinable impairments do not meet or medically exceed one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. at 18); (5) The ALJ found the Plaintiff's allegations regarding his limitations not totally credible for the reasons set forth in the body of the decision (R. at 18); (6) Plaintiff has the following residual functional capacity: Plaintiff is able to perform a full range of light exertional activities in that he is able to lift and carry up to 20 pound occasionally and 10 pounds frequently.  Plaintiff is able to stand and walk up to six hours in an eight hour workday and sit for about six hours in an eight-hour workday, and is unlimited in his ability to push/pull in either his upper or lower extremities (R. at 18);  (7) Plaintiff is unable to perform any of his past relevant work (R. at 18);  (8) Plaintiff is a younger

---

[3] Citations to the underlying administrative are designated as "R."

individual between the ages of 18 and 44 (R. at 18);  (9) Plaintiff has a high school, or high school equivalent education (R. at 18);  (10) Plaintiff has no transferable skills from semi-skilled work previously performed as described in the body of the decision (R. at 19);  (11) Plaintiff has the residual functional capacity to perform substantially all of the full range of light work (R. at 19);  (12) Based on an exertional capacity for light work, and Plaintiff's age, education, and work experience, the Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of "not disabled" (R. at 19);  (13) Plaintiff's capacity for light work is substantially intact and has not been compromised by any non-exertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, Plaintiff is not disabled (R. at 19).  Ultimately, the ALJ determined Plaintiff was not under a disability, as defined by the Act, at any time between his alleged onset of disability through the date of the decision (R. at 19).

10.     Plaintiff's first challenge to the ALJ's decision is that he rejected the medical evidence provided by the treating physicians and relied instead on reports and opinions of either non-examining or non-treating sources.  Plaintiff argues the ALJ's decision was not supported by the substantial evidence of record.

According to the "treating physician's rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under  C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of the opinions of Plaintiff's treating physicians, Doctors Jalal Sadrieh and Richard Zogby.  Rather, the ALJ's decision reflects his extensive evaluation of all the medical evidence in the record developed from the date of Plaintiff's alleged disability on June 24, 2002, through the date of his hearing before the ALJ on February 10, 2004 (R. 12-18).  The medical evidence includes treatment notes, evaluations of Plaintiff's progress, and test results (R. at 41-218). The opinions of Doctors

Sadrieh and Zogby were inconsistent and unsupported by the record as a whole.

Plaintiff began treatment with Dr. Sadrieh on July 2, 2002, after he sustained an injury to his lower back and left leg while positioning a passenger in a wheelchair on the bus he was driving (R. at 165). The doctor noted Plaintiff's complaints of pain, and the physical examination revealed marked paravertebral muscle spasm in the lumbar spine bilaterally, with restriction of motion (R. at 166). An x-ray of Plaintiff's spine showed essentially normal characteristics with only minor degenerative changes. Id. On July 30, 2002, Plaintiff underwent an MRI of the lumbar spine (R. at 110). The MRI revealed a minimal annular bulge at L3-4, a moderate annular bulge at L4-5, and an annular bulge at L5-S1 with a possible small left disc herniation (R. at 110-11, 162).

Plaintiff's treating physician, Dr. Sadrieh, recommended a regimen of conservative care, including medication, exercise, and hot and cold packs (R. at 159-164). However, on August 2, 2002, Plaintiff's treating physician, Dr. Fiacco, removed him from all medications because of a flare-up of a liver enzyme abnormality (R. at 106, 159). On November 11, 2002, Dr. Sadrieh noted Plaintiff, "has been doing well with regard to his liver disease; it is now stable" (R. at 157). Plaintiff's physical examination revealed tenderness in the lower lumbar area, pain on forward flexion, tightness in the paravertebral muscles, a grossly normal neurological exam, normal distal sensation and pulses, and normal strength (R. at 157-58). Dr. Sadrieh referred Plaintiff to a

pain management specialist, Dr. Catania (R. 158). Dr. Catania recommended epidural injections for pain relief (R. at 157).

On December 11, 2002, Plaintiff was again examined by Dr. Sadrieh. The exam was essentially the same as Plaintiff's prior exam with no neurological changes (R. at 156). Plaintiff underwent epidural injections administered by Dr. Catania on January 10, 2003 and February 7, 2003 (R. at 145-47). On February 19, 2003, Plaintiff reported to Dr. Sadrieh the injections did not make him feel much better (R. at 152). However, a physical examination of Plaintiff revealed only tenderness in the lower lumbar area, with some pain on forward flexion and straight leg raising (R. at 153). His neurological exam and strength was normal. Id. Dr. Sadrieh referred Plaintiff to orthopedic surgeon Dr. Zogby for a one-time consultation to determine if Plaintiff was a candidate for surgery on his lower back. Id. Dr. Zogby examined Plaintiff on March 17, 2003 (R. at 150-51). He found Plaintiff to be a poor candidate for surgery as Plaintiff's symptoms were discogenic and localized to the back, rather than the result of any true radiculopathy (R. at 150). Dr. Zogby recommended Plaintiff continue with his conservative treatment plan (R. at 151).

Plaintiff was again examined by Dr. Sadrieh on April 2, 2003 (R. at 189-191). The examination revealed tenderness in the lumbar area and pain on forward flexion and straight leg raise (R. at 190). Plaintiff's neurological exam was grossly normal. Id. Dr. Sadrieh recommended Plaintiff enroll in a water therapy program and participate in vocational rehabilitation. Id. Dr.

9

Sadrieh examined Plaintiff on May 14, 2003, and June 25, 2004, and noted lumbar tenderness, pain on forward flexion and straight leg raise, and a grossly normal neurological examination (R. at 184-85, 187-88).  Plaintiff was examined by Dr. Sadrieh again on August 13, 2003 (R. at 198-200).  The examination revealed tightness in the popliteal muscles, muscle spasm with flexion, and pain with sitting (R. at 199).  The doctor recommended continuing with conservative measures, including a home exercise program and medications including Flexeril and Ultram (R. at 199).

   Dr. Sadrieh examined Plaintiff on October 13, 2003 (R. at 195-97).  He noted Plaintiff stopped taking Flexeril and Ultram as Plaintiff claimed these medications were not working (R. at 195).  The doctor found Plaintiff had tenderness in the lumbar area, as well as paravertebral muscle tightness and spasm, and restriction of back motion (R. at 196).  He prescribed new medications, including Zanaflex and Vicoprofen (R. at 196).  On January 12, 2004, Plaintiff followed-up with Dr. Sadrieh (R. 192-94).  Plaintiff reported the Vicoprofen helped his pain, and he took the Zanaflex as needed (R. at 193).  Physical examination revealed lower lumbar tenderness, and pain on forward flexion and straight leg raising.  Id.  The doctor recommended Plaintiff continue his medications and home exercise program (R. at 194).

   As noted above, Plaintiff took no medication for his back condition from approximately August 2002, through August 2003, because of a liver enzyme abnormality diagnosed by his primary care physician.  Plaintiff's medical records were evaluated by State agency physician, Dr. Richard

10

Finley, to determine if Plaintiff had chronic liver disease (R. at 174-76). Dr. Finley noted Plaintiff had mildly abnormal liver function in January 2002, but in July 2002, his liver function tests were normal (R. at 174). On July 30, 2002, Plaintiff's liver function tests were again abnormal, but testing in January 2003 showed his liver functioning normally. Id. Dr. Finley assessed Plaintiff as having had acute hepatitis/pancreatitis in July 2002, with recovery from the condition by January 2003. Id. Dr. Finley noted in his report that he could think of no reason Plaintiff could not be treated for his back pain with analgesic or anti-inflammatory medications, because even if one of Plaintiff's earlier medications was responsible for his liver enzyme abnormality, another medication could be safely substituted. Id.

The ALJ assessed Plaintiff capable of light work based on the totality of evidence presented by his treating physicians, test results, the opinion of an independent medical examiner, and the opinion of a State agency physician. Plaintiff's neurological tests and motor, sensory, and strength examinations were consistently normal, or showed minimal findings (R. at 85-218). As an example, independent examiner Dr. Bruce Baker examined Plaintiff on September 26, 2002, and noted motor and sensory findings within normal limits in Plaintiff's lower extremities (R. at 96). He assessed Plaintiff as being unable to return to his past relevant work as a bus driver, but capable of work that would exclude climbing, allow alternate sitting or standing every 45 minutes, and limit weight lifting to a maximum of 20 pounds (R. at 94). State agency physician Dr. Sury Putcha reviewed

Plaintiff's medical record and noted Plaintiff's MRI revealed multiple disc bulges but no significant compression of the thecal sac or nerve roots (R. at 169). Dr. Putcha assessed Plaintiff as having the residual functional capacity to perform light work. Id. While Dr. Putcha did not physically examine Plaintiff, as a State agency physician he is deemed highly qualified in the evaluation of disability claims under the Act, and the ALJ properly relied on his opinion when making his assessment of Plaintiff's residual functional capacity. See C.F.R. §§ 404.1527(f); 416.927(f); SSR 96-6p.

Based on the foregoing, this Court finds that it was not improper for the ALJ to consider the medical assessments of Doctors Sadrieh and Zogby, but ultimately predicate his disability determination on the objective medical results, and the medical opinions consistent with those results, contained in the record. It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971). Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians and instead relied solely on the opinions of non-treating and non-examining sources. Rather, this Court finds that the ALJ afforded less weight to the assessments of Doctor Sadrieh and Zogby, which seems to have been based largely on Plaintiff's subjective complaints, than he afforded the medical opinions which were consistent with the objective clinical findings in the record.

11. The Plaintiff's second argument is that the ALJ improperly concluded Plaintiff retained the residual functional capacity to perform light work (R. at 17-18). Plaintiff cites the fact he has been under regular and consistent medical care for his injuries since the alleged onset date of his disability of June 24, 2002. Plaintiff notes his treating physicians have consistently opined he is totally disabled (R. at 41-44, 148-167, 187-195). He also points to the very restrictive Medical Source Statement Of Ability to Do Work Related Activities (Physical) completed by his treating physician Dr. Sadrieh that would limit Plaintiff to less than the full range of sedentary activities (R. at 179-182).

An ALJ is not required to adopt a conclusion by a medical provider that a claimant is disabled as disability determinations are reserved for the Commissioner. See 20 C.F.R. § 404.1527(e). In this matter, the ALJ reviewed all relevant evidence about Plaintiff's medical condition and concluded Plaintiff was not disabled within the meaning of the Act. Further, Plaintiff's treating physicians "disabled" him only from his work as a bus driver pursuant to his workers' compensation claim (R. at 148, 153, 156, 162, 164, 166, 185, 188, 196, 200). A treating source's opinion of disability rendered for the purpose of a workers' compensation claim is not binding on the Commissioner. See Gray v. Chater, 903 F. Supp. 293, 299 n. 7 (N.D.N.Y. 1995). A claimant is entitled to benefits under the Act only if his or her impairments are so severe that the individual cannot perform either past relevant work, or any other substantial gainful activity existing in substantial

numbers in the national economy.  See 42 U.S.C. § 423(d) (2) (A); see also Gray v. Chater, 903 F. Supp. 293, 301, n. 8 (1995).  In this matter, the Court finds the ALJ properly assessed Plaintiff's substantial medical evidence, as well as the opinions of his treating physicians concerning his level of disability, and concluded Plaintiff was not disabled under the Act.

 12. Plaintiff's third allegation is that the ALJ failed to consider Plaintiff's pain and subjective symptom testimony in determining Plaintiff was not disabled under the Act.  As an example, Plaintiff claimed that to relieve his pain, he needed to lie down for approximately 45 to 60 minutes eight to ten times per day.  The ALJ considered Plaintiff's testimony regarding his pain and symptoms, weighed the testimony against the objective medical evidence, and found Plaintiff's complaints of uncontrollable and disabling pain to be exaggerated (R. at 16).

 Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See Ber v. Celebrezze, 333 F.2d 923 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

 However, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  See 42 U.S.C. §§

14

423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).  In this case, there is no question Plaintiff's lower back problem is a severe impairment, but his reported symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record.  Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate his symptoms, and any other measures he used to relieve pain (R. at 12-17).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain (R. at 16).

  As an example, the ALJ assessed Plaintiff had some limitations because of his chronic pain and other symptoms, but noted Plaintiff's symptoms were "generally controllable" (R. at 16).  The ALJ pointed to the medical evidence provided by Plaintiff's treating physician, Dr. Sadrieh, as well as the opinions and findings of State agency medical consultants, in support of his assessment.  Id.  While Dr. Sadrieh opined on August 13, 2003, that Plaintiff was "totally disabled for his work as a Centro bus driver," and on January 12, 2004, that Plaintiff was "totally disabled," Dr. Sadrieh's findings upon examination of Plaintiff revealed only moderate results (R. at 16, 184-200).  Treatment notes provided by Dr. Sadrieh show Plaintiff described his back pain as "dull," "aching," and of "moderate" severity, even when treated

15

only with over-the-counter medication (R. at 184, 187, 189, 198).  Physical examination frequently revealed modest findings, including mild to moderate tenderness in the lumbar spine area, pain on forward flexion and straight leg raising, and tightness in the paravertebral muscles (R. at 153, 156, 157-158, 184-185, 187-188, 189-191, 192-194).  Plaintiff's neurological and strength tests were normal.  Id.  When making his determination that Plaintiff was not disabled within the meaning of the act, the ALJ also considered the expert opinions of a State agency examining physician, and a State agency consultant, who both opined Plaintiff's pain and limitations from his back injury would not prevent him from meeting the physical demands of light work (R. at 94-97, 168-173).

Further, the ALJ considered Plaintiff's medications and other conservative treatments when assessing Plaintiff's claims of debilitating pain and other limitations (R. at 15-16).  While Plaintiff took prescription medication for pain when he was first injured in June 2002, the medications were discontinued in August 2002, when he suffered a flare up of hepatitis/pancreatitis (R. at 106, 159, 165).  Plaintiff received pain relief injections in January and February 2003 (R. at 145-147).  He re-started prescription pain medication and muscle relaxers in August 2003, and on February 10, 2004, the day of his hearing, told the ALJ that the medications "take the edge off" the pain (R. at 199, 230).  Plaintiff attended physical therapy shortly after his initial injury, and was instructed in a home exercise

program by Dr. Sadrieh (R. at 157, 260, 163).  Such conservative treatment measures are inconsistent with Plaintiff's claims of totally debilitating pain.

Finally, the ALJ considered Plaintiff's activities of daily living when assessing his credibility (R. at 15-16).  While Plaintiff reported that he spent much of his time at home engaged in sedentary activities, the ALJ noted Plaintiff was able to perform household activities, including vacuuming, lawn mowing, and shopping (R. at 16, 70, 73, 74, 75, 76).  He was able to care for his personal grooming and hygiene (R. at 16, 73).  Plaintiff reported that while his wife did most of the cooking, he was able to cook his own meals when necessary (R. at 73).  He could drive a car and go out alone (R. at 74).  He socialized on a regular basis with friends and family (R. at 76).  Plaintiff's ability to engage in such activities of daily living belie his claim of pain so debilitating that he would be unable to engage in work-related activity on a consistent basis.

In sum, this Court finds the ALJ properly considered Plaintiff's pain and symptomatology, along with the medical and other evidence in the record, and the totality of evidence does not substantiate Plaintiff's claim that his pain and other symptoms were disabling.  Accordingly, the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented an explicit summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16).  See e.g.

<u>Mimms v. Sec'y of Health and Human Servs</u>., 750 F.2d 180, 196 (2d Cir. 1984).

16.	After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, consultative examiner, and State agency medical consultant, and afforded Plaintiff's subjective claims of pain an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error and further finds that substantial evidence supports the ALJ's decision.  The Court grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is denied.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:  March 5, 2008
        Syracuse, New York